Good morning, your honors. I'm Robert J. Mulhern. I'm the attorney for the appellant Peter G. Bukiri. I'd like to reserve five minutes for my rebuttal. Very well. And I'd like to first apologize to the court as to the order to show cause. All I was trying to do is put my best case forward to this court and for my clients. And my apologies to the court and take full responsibility. Well, certainly the briefs have more than adequate word limits. And you can make your case within the rules of the court for sure. And, you know, I think to the panel it was a huge distraction to have to understand what you were trying to present. And then, you know, we certainly don't want that to fall on your client. But it really was kind of a breach of your duty to us. Yes, your honor. My apologies. Your honor, if it pleases the court, before the court is in appeal of a preliminary injunction, this preliminary injunction emanates from ATF Order 2293.1B. This order, in effect, is a qualification standard and a criteria order. This order focuses directly on individuals with disabilities. What this order says is that you have, if an employee has a pre-existing medical condition, such as my client has a chronic medical condition, you don't qualify for the hardship if it occurred prior to your acceptance. Counsel, can we move forward to at least what in my mind is the most pressing issue here? I don't find any evidence, any evidence on your client's part that the government was motivated in part or in whole based upon your client's wife's disability. Where is it? Your honor, if you look at it, ATF has admitted that my client did not receive a hardship because... I get that, but you need to say there's a violation here because my wife had this problem and they made this transfer because of this. They intentionally discriminated against me because my wife has this disability. You don't say that, do you? Yes, your honor, we do. And if you look at... Where? If you look at the... In our exhibits, if you look at exhibit... ER 30, what the... And this goes to the admission, your honor. ATF admitted that my client was transferred in part because of the pre-existing medical condition of Mrs. Bukeri. That's when they came here, right? Is that correct? That's when they came here, when they came to LA. No, your honor. This was the transfer... My client originally came to California on or about July 3, 2011. And that was... Wasn't that an accommodation by ATF to allow him to come to California? It wasn't through the hardship board, your honor. It was through the chief, Vidoly, who was the chief of special operations at the time. And he did that to... He granted that. He did that to help out your client. Yes, your honor, but it wasn't through the hardship process. Why is that material, whether it was hardship or discretionary? It just... I just thought it was important, your honor. But he... When my client... When my client, on May 18, 2015, went back, was transferred unilaterally without consent and went back to ATF headquarters, your honor, he didn't... He was just thrown back. But does... Excuse me. Is it significant, when we review the record, to see where he was hired and for what position? Your honor, he was hired on July 3, 2011, as a crisis negotiator when he was... To work where? When he was transferred here to California. And then on November 3, 2013... Maybe I didn't make my question clear enough, and that's why I'll try again. He was hired for a job, wasn't he? Yes, your honor. What job was he hired for and in what place? At what point in time, your honor? He... On July 3, 2011, he was... I'll give up. You will see it when we decide it. He was hired to work at one point. He was permitted to transfer as an accommodation because of his wife's problems. Then he was moved back to the place at which he was originally hired. Now, have I missed something? He came... Yes, but it wasn't... Is the court asking if it was an accommodation? Because it was not an accommodation. I don't think I said anything about accommodation. I said, was he hired in one place? Yes, your honor. Then was he permitted to come to California?  At his request? Yes, your honor. Then was he sent back to the place at which he was originally hired? Isn't that what this record shows? This record shows that my client came here because ATF... He requested a transfer and ATF transferred him to California. Right. Then ATF... Then Mr. Bukhari never requested to leave California because he wanted to care for the health, safety, and welfare of his wife. He wanted to maintain his position. I'm not suggesting he requested it. I'm saying the company hired him at point A. At his request, he was permitted to go to point B. The company decided, no, we no longer need you at point B, although we've let you to go there. We're bringing you back to the place where we originally hired you and the job for which we originally hired you. And I'm asking you, is that what this record shows? It sounds like, your honor, that the court is asking if my client was requesting accommodation. That didn't... I don't think I said anything about accommodation. I don't think I did. Did I? No, your honor, but it sounds like that... I said he was hired at point A. At his request, he was permitted to go to point B. The company then decided, we no longer need you at point B. We're bringing you back to point A, the point at which you were hired and the job for which you were hired. And I'm asking you, is that what this record shows? Yes, your honor, it does. But my client, his... Merlin Bukeri is disabled. Yes. And Mrs. Bukeri, Mr. Bukeri has to care for the health, safety, and welfare of Mrs. Bukeri. And I assume that's why he asked if he could come to California. At least this record suggests that's why he asked. That's why he asked originally, and it went through Mr. Vidoli of Special Operations. So it was accommodation to him. They let him come to California. No. They decided, all right, we need you back where we hired you, and that's what we're doing. What I'm trying to ask you, if we agree on the record, is how in the world on that Mr. Vidoli? Your honor, because if we look at ATF order 2293.1B, the order itself, the effect of this order, it's a qualification standard selection criteria order. And this order focuses directly on the disability Merlin Bukeri. What it says is that if you, again, if you are transferred, I'm sorry, this order says if you have a disability, and as such as Mrs. Bukeri, a pre-existing disability, you don't qualify for the hardship. If you, those employees that do not have, that the disability occurred during employment, those individuals do qualify for the hardship. And in this case, Mr. Bukeri didn't qualify because Mrs. Bukeri had a pre-existing. Under that logic then, the denial of any hardship for a pre-existing disability would be a violation of the Rehabilitation Act. Your honor, and that may be so, but what I'm saying is it's this ATF order and is discriminatory and the effect of this order, the subsequent practices of failing to maintain a duty station of an employee so that employee can take care of the health, safety and welfare of his wife is discriminatory. How can the failure to grant a hardship demonstrate that the agency was motivated by a purpose to discriminate? And I go back to the admissions of ATF, your honor. ATF admitted that my client did not qualify for the hardship under the hardship rules, ATF order 2293. Incidentally, what standard of review are you advocating the Ninth Circuit adopt in this case? The Ninth Circuit, they've already ruled and that, if we look at the standard that was the wrong standard in the district court, the judge used a McDonald-Douglas standard with a, I'm sorry, used a determining factor standard with a McDonald-Douglas analysis. The court, this is a motivating factor, a mixed motive case and because it's a mixed motive case, the proper standard to use is the motivating factor standard without a McDonald-Douglas analysis and I refer the court to the Supreme Court case of Price Waterhouse and also the Ninth Circuit case of the head cases. Neither one of those were Rehabilitation Act cases, were they? That's exactly right, your honor. They were American with Disabilities Act cases. So it's an open issue in this circuit what the proper standard we apply should be? No, I don't think it's an open issue because it was already decided under the American with Disabilities Act and the Rehabilitation Act takes from the laws from the American with Disabilities Act. So I think it's appropriate to use the Supreme Court case in Price Waterhouse, that standard, and also the Ninth Circuit case in the head case, your honors. Does it matter here, the agency certainly knew of Mrs. Bucheri's disability and that they permitted him to transfer because of that and as Judge Ferris said, at some point in time the ATF's business needs changed and they needed him in Washington instead of Los Angeles. Is there, what's your best argument other than the, I guess, the text of the 2293 order that they were targeting him because of his association with his wife and her disability? Your honor, I see. Is there any evidence of motive or pretext other than the order? If we use the proper standard, the McDonnell-Douglas, or the motivating factor standard without a McDonnell-Douglas analysis, if we use that, then there is no McDonnell-Douglas analysis, there is no burden shifting analysis. You have to show director's circumstantial evidence of a motivating, invidious reason, right? Yes, your honor, and therefore there is no pretext required because there is no burden shift in analysis to use pretext when looking at... Other than the order, what is the director's circumstantial evidence that shows an invidious motivating reason? The admissions, your honor, I have to keep on going back to these... Is that it? You said that at the very beginning. So whether we're using the head standard or McDonnell-Douglas, you're relying upon what you call the admissions, is that the sum total of the motivating factor or, if you will, the motive for transferring, re-transferring your client back to D.C.? It is, and it's sufficient, your honor. I understand you think it's sufficient, but I just want to make clear, what is there on ER30 is the total sum of the evidence that you meet, whether you go with head or McDonnell-Douglas, that is the sum total of the motivational factor, the motive, whatever you want to call it. Your honor, if we look at, it's page 30 and 32, if I remember correctly, in our excerpts of record where ATF made these admissions, but ATF also made the admission on page 12, if I remember correctly, your honor, yes, page 12 in their opposition, where ATF stated that his request to avoid the transfer was denied in part because of the pre-existing nature of his wife's disability. If we look also on page 2 or page 30 of the ER, the letter states that Mr. Bucheri was denied the hardship request because of the current circumstances of the pre-existing nature of Mrs. Bucheri's medical condition, and it also says that on page 32 that Mrs. Bucheri was denied the appeal in the hardship. Do you want to save any of your time? You're down to 30 seconds there. Yes, your honor. Okay, very good. Let's hear from the government. Good morning, your honors, and may it please the court, I'm Keith Staub, I represent the appellees in this action. This court properly denied the motion for preliminary junction on the grounds that the appellant failed to present a substantial likelihood of succeeding on the merits. I think it's important to point out at the outset that the appellant has not exhausted his administrative remedies on the underlying claim under the Rehab Act. He filed his EEO complaint in May of 2015 and soon thereafter filed the lawsuit, in this case, in district court. Does failure to exhaust matter for purposes of evaluating this appeal? Only to the extent that the court lacks subject matter jurisdiction if there's no underlying basis. I also wanted to point out the facts of this case, which are as follows. The appellant's wife was injured in a car accident in June of 2008. The appellant was hired specifically to work in Washington, D.C. in February of 2010, where he worked for several years while his wife remained in California running her store. After the accident? After the accident. In June of 2011, the appellant sought a hardship request to transfer back to Los Angeles. And in that request, he specified the term accommodation. He asked specifically for an accommodation. A month later, the ATF granted that hardship request and transferred him back to Los Angeles where he remained working for several years until the ATF determined that he could no longer work in Los Angeles. And therefore, they transferred him back to D.C. It's clear from the record that the appellant was, in fact, seeking an accommodation and that under the ADA, an accommodation is not required. Mr. Molner is effectively saying that the policy is facially discriminatory. What's your response to that? It's incorrect. There's nothing in the policy that suggests it discriminates against employees based on the disability of their associates. It only differentiates hardship requests, dividing them into two categories, one being those that preexisted and those that did not. There's no suggestion in that order whatsoever on its face that it's discriminatory. Why is that categorization? What's the purpose for the dichotomy? Well, I cannot Because why is it significant that it's preexisting versus not? Yes. I would have to speculate as to the reason because I don't know the reason the ATF did it. But one can certainly presume that the ATF wants to know in advance if there is some problem that an employee would encounter in having to be assigned to do different places. So they want to know in advance if there's some reason and they want the employee to know as well. It's also important to point out in this case that this policy is not a disability policy per se. It is a hardship policy. It involves all sorts of hardships that may or may not be related to medical issues and the policy doesn't even address a family member's disability. As the court pointed out, the primary and the most important issue in this case is whether there's any evidence whatsoever that the employee was discriminated against because his wife was disabled. And the fact is there is none. There is no evidence in this record that Mr. Bucheri's hardship request was denied specifically because of his wife's disability. Instead, the record clearly shows and it's undisputed that he was returned to Washington, D.C. because of the staffing agency needs. What standard is the government advocating? Motivating factor or, you know, this determining factor in the McDonnell-Douglas Seventh Circuit I understand goes other ways. It's our position it doesn't matter. It wouldn't alter the outcome if you used motivating factor, if you used determining factor, or if you used a but-for. If we disagree that it did matter, which does the government advocating a particular case, would you ask us to extend head to these circumstances? Motivating factor or something else? No, Your Honor, I wouldn't. The reason is since the head case there's been Supreme Court cases in Gross and Nassar that addressed specific language that the legislature uses in a causation on an ADA case. And in this instance, this regulation, this statute uses because of. It says because of a disability. That limits it to one specific cause. It is not a mixed motive. It has to be because of the disability of the relative. So, as again, I don't think it matters in this case because there's no evidence of discrimination for even if it was in part or entirely. But I think that the other circuits that have addressed this have called it a determining factor. In the appellant's original motion he asked the court to use a determining factor standard, and that's what the district court used. The district court used the Tenth Circuit standard, right? That is absolutely correct. Is that a fine standard? Absolutely, Your Honor. We think so. So, the bottom line is, again, there is no evidence in this record that the hardship request was denied because of the appellant's wife's disability. So, bottom line, from your perspective, this really just comes down to a complete failure of proof. That's right. Unless the court has any further questions. No questions. Thank you. Thank you, Your Honor. Thank you. You have a little rebuttal time. Your Honor, as to the government's issue as this being an accommodation case, this is a status quo case. And even the district court held that it was a status quo case when the court ruled on this was a prohibitory preliminary injunction, that it was a status quo case when Mr. Bucheri was only requesting to maintain his duty station and to maintain his position. Furthermore, I'd like the court to refer to the Birch v. Coca-Cola case. And in that case, the court held that a reasonable accommodation requires a change in performance procedures and facilities. Mr. Bucheri did not request a change in performance procedures or facilities in order to better do his job. Therefore, this is a status quo case, not an accommodation case. Counsel, I'm afraid your time is up. Thank you, Your Honor. We thank you for your argument. Thank the government for its argument. The case just argued is submitted.
judges: Tymkovich, Farris, M. Smith